Louis F. Fromer & Co. vs. Stanley and another.

LOUIS F. FROMER & COMPANY, Respondent, vs. STANLEY and another, Appellants.

*December 19, 1896 — January 12, 1897.*

(1) *Special verdict.* (2) *Sale of chattels: Fraudulent representations: Replevin: Return of notes.*

1. The submission of thirty-eight questions to be answered in the form of a special verdict, in a case involving only two or three simple issues, is criticised as tending to confuse and mislead the jury.
2. Neither an accidental remark by a merchant that he "considered himself worth from $10,000 to $20,000 clear," made in conversation with the agent of a manufacturer but not connected with any negotiations or sales (being simply the expression of an opinion), nor the statement of the merchant at the time of making a subsequent purchase that he would discount his bills the following January (being a mere promise), even though false, could form the basis of an action to reclaim goods subsequently sold, on the ground of fraud.
[3. Whether an action of replevin can be maintained without returning notes given for the goods replevied, not determined.]

APPEAL from a judgment of the superior court of Milwaukee county: J. C. LUDWIG, Judge. *Reversed.*

It appears from the record that, during the times mentioned, the plaintiff was a manufacturer and wholesale dealer

Louis F. Fromer & Co. vs. Stanley and another.

in cigars, in the city of New York; that, during the same times, one John A. Stapleton was a retail dealer in cigars in the city of Milwaukee; that between November 15, 1894, and March 21, 1895, the plaintiff had sold and delivered to Stapleton a large quantity of cigars of different varieties, and for which the plaintiff had taken Stapleton's notes; that March 25, 1895, one Evans recovered two judgments against Stapleton, aggregating $2,219.33, and on that day issued executions thereon to the defendant *Stanley*, as sheriff, and he immediately levied upon Stapleton's stock, and took the same into his possession as such sheriff, under such executions; that thereupon and on the same day, the said Stapleton made a general assignment for the benefit of his creditors to the defendant *Whitnall*, who immediately qualified and took possession of the property so assigned to him, subject to such levy; that March 27, 1895, the plaintiff demanded of the defendants the cigars in their possession which had been sold to Stapleton by the plaintiff, but which the defendants refused to deliver up; that March 28, 1895, the plaintiff commenced this action of replevin, to recover possession of such cigars, on the ground that the plaintiff had sold the same to Stapleton on his false representation as to his solvency.

At the close of the trial, the jury returned a special verdict, answering thirty-eight questions, to the effect that Stapleton did, October 26, 1894, state to the plaintiff's agent Henry G. Alces that he (Stapleton) considered himself worth from $10,000 to $20,000 clear, but that Stapleton at that time was not worth from $10,000 to $20,000 clear, and he (Stapleton) then knew or ought to have known that such estimate of his financial condition was not true; that such representation was made by Stapleton to deceive Alces, and for the purpose of inducing Alces to make sales to him upon credit, and Alces believed such representation to be true; that, after such representation was made, Alces did sell to

Stapleton all the cigars involved in this action, except the 1,325 Patti Perfecto cigars, the 5,000 Conchas Finas, ordered January 10, 1895, and the 7,800 Horseshoe cigars included in the contract of resale made on March 21, 1895; that Alces would not have made said sales if it had not been for the representation of Stapleton; that Alces relied upon said representation mentioned; that Alces informed the plaintiff that Stapleton represented to him that he considered himself worth from $10,000 to $20,000 clear, but did not inform it that Stapleton represented to him that he considered himself worth about $20,000 clear; that Alces reported such representation to the plaintiff within two weeks from October 26, 1894; that the plaintiff did believe the representation of Stapleton so communicated to it by Alces to be true; that the plaintiff did sell cigars to Stapleton upon his direct order January 10, 1895; that plaintiff, in making such sale January 10, 1895, relied upon the representation of Stapleton as it was so communicated to it, and, in filling the order from Alces for Stapleton, relied upon the representation of Stapleton as so communicated to it, and would not have made such sales and filled such orders if it had not been for the representation of Stapleton as so communicated to it; that March 21, 1895, Stapleton represented to the plaintiff that he was then solvent, but such representation was false, and Stapleton then knew or ought to have known such representation to be false, but such representation was made by Stapleton to deceive the plaintiff, and for the purpose of inducing the plaintiff to sell goods to him on credit; that the plaintiff believed such representation by Stapleton as to his solvency; that after such representation, on March 21, 1895, the plaintiff made a resale of goods to Stapleton; that there were included in such resale, March 21, 1895, 4,100 Adelina Patti Favoritas cigars, 4,150 Reina Perfecto, 9,250 Conchas Finas, and the 7,800 Horseshoe cigars; that the plaintiff relied upon the representation of Stapleton that he

was solvent, in making such resale; that when Stapleton purchased the goods, March 21, 1895, he had the preconceived purpose of not paying for them at all, or only a per cent. thereof; that the defendant *Whitnall* unjustly detained from the plaintiff the cigars described; that the defendant *Stanley* unjustly detained from the plaintiff the case of cigars described, of the value of $450; that the value of the cigars replevied in this action, and included in the sale of March 21, 1895, was $943.78; that none of the cigars involved in this action were sold to Stapleton before October 26, 1894, except the 1,325 Adelina Patti Perfectos.

From the judgment entered upon such verdict accordingly, the defendants bring this appeal.

For the appellants there was a brief by *Elliott & Hickox*, and oral argument by *C. T. Hickox*.

For the respondent there was a brief by *Henderson & Williams*, attorneys, and *Geo. E. Sutherland*, of counsel, and oral argument by *Mr. Sutherland*.

CASSODAY, C. J.   1. The submission to the jury of thirty-eight questions in the form of a special verdict, to determine the simple issues here involved, necessarily tended to confuse and mislead the jury, and hence is open to the criticism which this court has frequently made in similar cases.   *Eberhardt v. Sanger*, 51 Wis. 74, 76, and numerous cases there cited; *Heddles v. C. & N. W. R. Co.* 74 Wis. 257, 258; *Montreal River L. Co. v. Mihills*, 80 Wis. 551–555; *Ohlweiler v. Lohmann*, 88 Wis. 78.   No additional force can be given to such criticism by repetition.   Such criticism is not obviated by the fact that the appellants requested the submission of fifty-six questions which the trial judge must have regarded more objectionable than those which he did submit.

2. The case is simple and necessarily turns upon two or three questions.   One of them is as to the false representation found by the jury to have been made by Stapleton to

the plaintiff's agent Alces, October 26, 1894, to the effect that he "considered himself worth from $10,000 to $20,000 clear." It appears that Stapleton had been in the tobacco and cigar business for more than twenty years; that, as such dealer, he had been acquainted with Alces for eight or nine years; that during that time he had, through him, bought cigars of the father of Alces before he became the agent of the plaintiff; that during those years he had "had more or less conversation with Stapleton as to his means;" that September 8, 1894, Alces sent to the plaintiff Stapleton's first order for cigars; that September 18, 1894, the plaintiff wrote Stapleton, in effect thanking him for the order so given by him to Alces for 25,000 cigars, of which 15,000 were to be sold to the retail trade, and promising to put up the cigars in good shape, and ship them in two or three weeks, and expressing the belief that, by careful attention and the assistance the plaintiff would give him, he would "be able to build up a very large trade" in the plaintiff's cigars; that Stapleton objected to the letter, and at first refused to accept of the cigars, unless the plaintiff would dispose of, or aid him in disposing of, the 15,000 to the retail trade; that October 15, 1894, the plaintiff shipped the cigars so ordered to Stapleton; that the purchase price of those cigars was $1,408.70, on a credit of four months' time; that, after Stapleton received the 25,000 cigars so shipped to him, he and Alces went to Racine, to sell the 15,000 mentioned to the retail trade. Mr. Alces testified that as he and Stapleton were returning to Milwaukee, on the cars from Racine, Stapleton said to him: "Well, how do you like this?" He replied that it was a pretty tough day. Stapleton then said: "Well, I have been doing this for a great many years, as you know." He then said to Stapleton: "Yes, but you have no reason to complain." Stapleton then asked, "Why?" He replied: "Why, you must be worth from $20,000 to $50,000." Stapleton then "poo-hooed at

the idea of $50,000, but on our way told me in words plainly that he considered himself worth from $10,000 to . $20,000 clear anyhow." Alces further testified to the effect that he believed such statements to be true when he subsequently sold goods to Stapleton; that, when he made such subsequent sales, Stapleton said he would discount the bills in the next January; that in the absence of such representations and his statement that he would discount the bills in January, upon which he relied, he would not have made such subsequent sales. Stapleton testified to the effect that Alces never said to him that he (Stapleton) must be worth from $20,000 to $50,000, and that he never told Alces "that he considered himself worth from $10,000 to $20,000 clear anyhow," and that he never promised to discount bills in January. And he further testified that according to his inventories, at purchase prices for new goods, and reduced prices for old goods, his stock was, according to his books kept during the time, as follows: January, 1890, $13,377.66; January, 1891, $16,309.40; January, 1892, $12,759.34; January, 1893, $13,122.75; July, 1893, $10,809.63; January, 1894, $10,400; January,. 1895, a little over $10,000; that his bills receivable and due him in January, 1895, on outstanding accounts, were about $16,000; that his assets in January, 1893, exceeded his liabilities by $16,800; that his assets in January, 1894, exceeded his liabilities a little over $10,000, and in January, 1895, a little less; that in March, 1895, his total indebtedness, including the plaintiff's, was about $17,000. The assignee realized out of the whole stock and assets only about $7,000.

Assuming that October 26, 1894, Stapleton did state to Alces that he " *considered* himself worth from $10,000 to $20,000 clear," as found by the jury, and that such statement was untrue, nevertheless the making of the statement, under the circumstances stated, was, in our judgment, a mere casual expression of opinion, not connected with any

contract of sale or proposed sale, and hence not the basis of an action to reclaim the goods subsequently sold, on the ground of false representation or fraud. Alces had known Stapleton, and, in behalf of his father, had sold him goods for many years; and, a few weeks before, he had contracted, in behalf of the plaintiff, to sell him goods of the value of more than $1,400, on long credit, and which goods the plaintiff had already delivered, without Alces or the plaintiff asking any question as to his (Stapleton's) responsibility. Under such circumstances, and after completing the business of the day at Racine, and while riding home on the cars, an accidental remark of Alces induced Stapleton to say that he "considered himself worth from $10,000 to $20,000 clear." It is not stated as an existing fact, but merely that he "considered" himself worth that amount, — in other words, that that was his estimate or opinion of his then present worth; and the fact that he said from $10,000 to $20,000 shows that he was not claiming to have any definite knowledge or well-defined opinion on the subject; and, besides, he was talking to a man who, from the nature of things, would naturally be supposed to know more or less about his financial condition. There is nothing to indicate that the statement was dishonestly made, or made with intent to deceive or defraud the plaintiff or any one. The mere fact that, after the failure, the proceeds of the stock and assets were much less in value than the liabilities, does not prove that Stapleton so regarded them in October, 1894,— nine months after his last inventory,— or that they were so in fact.

The trial judge charged the jury to the effect that they knew from their own experience, and that the evidence in the case confirmed the same, "that the value of merchandise in such business as Mr. Stapleton's was changeable and fluctuating;" and yet he charged the jury that "the law presumes that a party knows his financial·condition." A

merchant is not at all times conclusively presumed to know his own financial condition when the same is dependent upon values which are changeable and fluctuating, and certainly he cannot know what his stock would bring in cash at any particular time on forced sale. This court has gone, perhaps, as far as any court in holding that false representations of facts, *which have induced* the making of a contract, may be actionable, although not shown to have been made wilfully or with fraudulent intent. *Maltby v. Austin*, 65 Wis. 527; *Montreal River L. Co. v. Mihills*, 80 Wis. 540, 560–563, and the cases there cited; *Castenholz v. Heller*, 82 Wis. 30; *Gunther v. Ullrich*, 82 Wis. 228; *Porter v. Beattie*, 88 Wis. 32; *Nash v. Minn. T. I. & T. Co.* 159 Mass. 437; *S. C.* 163 Mass. 574. See what is quoted from *Joliffe v. Baker*, 11 Q. B. Div. 255, *Palmer v. Johnson*, 12 Q. B. Div. 32, *S. C.* 13 Q. B. Div. 351, *Derry v. Peek*, L. R. 14 App. Cas. 377, in the case in 80 Wis. above cited. But in those cases the representations were of matters of fact, and made during the negotiations for the sale.

3. Besides, the plaintiff's agent and witness to whom the alleged representations were made testified to the effect that when he sold Stapleton goods subsequently to October 26, 1894, he asked him if he was not going to discount some of his bills, and that he replied that he would the following January. The language of the witness on this point is as follows: "Q. In the absence of those representations on his part, would you have sold him the goods? Ans. In the absence of those representations, *and had he not stated* he would discount all bills in January, I would not have sold the quantity of goods which I did. Q. Then this statement to you that he was worth from ten to twenty thousand dollars, and that he expected to be prepared on the 1st day of January next to discount the bills, induced you to sell to him these goods? — You relied upon those statements? Ans. Yes. Q. And you made that the basis of

Louis F. Fromer & Co. vs. Stanley and another.

your order for goods to be sent to John A. Stapleton upon your employers, *Fromer & Co.?* Ans. Yes, sir." So it appears that one of the principal grounds for making such subsequent sales on credit was Stapleton's statement that he would discount the bills in January. But that was not the statement of a fact *in præsenti*, and hence was not the basis of an action for rescinding the sale. *Warner v. Benjamin*, 89 Wis. 290; *Patterson v. Wright*, 64 Wis. 289; *Sheldon v. Davidson*, 85 Wis. 138. It was, at most, a mere breach of promise; and yet, according to Alces' own testimony, he might not have sold the goods at all had not that promise been made. False representations which are not relied upon are not actionable. *Fowler v. McCann*, 86 Wis. 427. The same is true of a false promise, a mere expression of an opinion, a casual remark, not made during the negotiations, or with any intention of influencing the conduct of the opposite party. We must hold that the representations of Stapleton, assuming them to have been made as testified to by Alces and that they were false, were not of such a character as authorized the plaintiff to rely upon them, and avoid the sale in consequence of them.

4. It follows from what has been said that, upon the evidence before us, there is no ground for the recovery for any of the cigars actually ordered and received by Stapleton prior to March 21, 1895. As to any of such cigars there can be no ground for claiming a resale, but at most an extension of credit. If, as some of the testimony seems to indicate, Stapleton claimed to the plaintiff, on the day and year last mentioned, that a certain case of the cigars had never been ordered by him, and especially if he never in fact ordered them, then such case might be the subject of sale on that day. Appellants seem to concede that that case, never passed to *Whitnall* by the assignment, but claim that this action cannot be maintained by reason of certain rules of law; while the respondent seems to justify all the find-

ings which cover the one case mentioned. We are in no position to settle that controversy on this appeal, and hence the same is necessarily left open for the trial court.

5. The opinion expressed renders it unnecessary to determine whether this action of replevin can be maintained without returning the notes given for the goods replevied.

*By the Court.*— The judgment of the superior court of Milwaukee county is reversed, and the cause is remanded for a new trial.