PUFFER and others, Respondents, vs. WELCH and others, Appellants.

*December 9, 1910—January 10, 1911.*

*Real-estate brokers: Option contract: Assignment: False representations: Who may maintain action: Assignability of cause of action: Retroactive statute: Discontinuance: Discretion: Appeal: Waiver of right: Acceptance of costs.*

1. Where the owners of property, wishing to sell it for a certain net
   price and to secure to selling agents, as a commission, all that
   could be obtained in excess of such price, gave to the agents an
   option to purchase the property at said price, the mere fact that
   such option ran to the agents "and their assigns" did not render
   misrepresentations made by the owners to such agents available
   as the basis of an action of deceit in favor of other persons, not
   purchasers of the property, to whom such agents afterwards assigned an interest in the option.

[2. Whether agents to whom an option is given for such a purpose
   can create other agents with equal authority, by assigning to
   persons, not purchasers of the property, undivided interests in
   such option, not determined.]

3. The word "assigns" in such option means purchasers of the property to whom the agents might transfer the option, not other
   persons to whom the agents might transfer an interest in the
   option for the purpose of creating other agents of the owner.

4. An action by assignees of such option to recover damages on account of false representations made by the owners, by reason of
   which the holders of the option were unable to make a sale and
   lost their time and money expended in the attempt to sell and
   their prospective profits on a sale, is an action for unliquidated
   damages caused by deceit.

5. To support an action of deceit the misrepresentations must have
   been made to the plaintiff, or to a third person with the inten-

Puffer v. Welch, 144 Wis. 506.

tion that they be communicated to plaintiff, or so made to a class of which the plaintiff is a member, or so made to the public generally,—in each case with the intention on the part of the person making such misrepresentations that the plaintiff should rely and act thereon; and plaintiff must have so relied and acted.

6. Misrepresentations which accompanied the giving or induced the acceptance of a written instrument running to the vendee or obligee therein named "and assigns," do not run with the instrument so as to give a right of action in favor of persons to whom they were not uttered or addressed or intended to be communicated.

7. Prior to the enactment of ch. 353, Laws of 1907 (sec. 4253, Stats.), a cause of action at law for deceit did not survive and was not assignable.

8. Assuming, without deciding, that ch. 353, Laws of 1907, affects rights of action which accrued prior to and existed when that law went into effect, still it could not be retroactive in the sense that an assignment of an otherwise nonassignable cause of action made several years before that statute went into effect would be thereby made valid.

9. Ordinarily it is within the discretion of the trial court to permit the plaintiff to discontinue an action at law in which no counterclaim is interposed, where the application for leave to discontinue is timely made. ·

10. Where a complaint fails to state a cause of action and is first challenged by demurrer and motion for judgment on the pleadings, and plaintiff thereafter bases his request for a discontinuance upon an admission that a plea in bar contained in the answer is true, and defendant again requests the trial court to dispose of the objection going to the sufficiency of the complaint before granting leave to discontinue, it is error to permit the discontinuance of the action instead of disposing of it on the other grounds first before the court.

11. The disposition of the case, under such circumstances, should be that which will define rights and finish litigation rather than that which will leave the case open for further and perhaps fruitless and expensive litigation.

12. An appellant who contends that there should have been a judgment dismissing the action on the merits instead of a judgment of discontinuance, did not waive his right to appeal from the latter judgment by taxing and recovering his costs prior to taking the appeal, because, being entitled to the costs under either judgment, he did not thereby do anything inconsistent with the claims urged on the appeal.

APPEAL from a judgment of the circuit court for Milwaukee county: WARREN D. TARRANT, Circuit Judge. *Reversed.*

For the appellants there were briefs by *Harrison S. Green,* attorney, and *Doerfler, Green & Bender,* of counsel, and oral argument by *Harrison S. Green.*

For the respondents there was a brief by *Gill, Barry & Mahoney,* and oral argument by *A. R. Barry.*

TIMLIN, J.    After the dismissal of a former appeal in this cause (141 Wis. 304, 124 N. W. 406) the appellants caused final judgment to be entered, and now on appeal from that judgment seek to assert the grounds for reversal attempted on the former unauthorized appeal.    Pending this appeal Charles A. Welch died, and upon suggestion of his death it is ordered that his appeal revive and be continued in the name of his personal representative, *Charles G. Welch.*

The amended complaint averred that on February 6, 1903, the appellant *White Rock Mineral Spring Company,* a corporation, desiring to make sale of its property, and certain shareholders therein, including the defendant Charles A. Welch, desiring to make sales of their shares of stock therein, "for the purpose and with the intent to give to the defendants, E. R. Estberg, Frederick Phelps, and T. E. Ryan, and their assigns, for a limited time, an exclusive agency for the sale of such property and stock, and to insure to said parties as commissions on such sale all sums which a purchaser found by such agents should be able and willing to pay in excess of the net price therein named, made, executed and delivered to E. R. Estberg, Frederick Phelps, and T. E. Ryan and their assigns an option in writing, whereby the said company and said stockholders, for a valuable consideration, agreed to sell to the said Estberg, Phelps, and Ryan, their heirs and assigns, all of the assets, business, good will, etc., of the *White Rock Mineral Spring Company* within ninety days from the date thereof for $1,250,000."    Thereafter and on Feb-

ruary 19, 1903, Estberg, Phelps, and Ryan, for a valuable consideration, sold, assigned, and transferred to the plaintiffs (respondents here) *George D. Puffer, John H. Harris,* and *George B. Harris,* and to C. A. Haertel, each an undivided one-seventh interest in said option. Thereafter the parties owning and holding said option expended time and money in endeavoring to procure a purchaser for the property on the terms of such agreement. Within ninety days they procured a purchaser ready, able, and willing to buy the property on these terms and brought the proposed purchaser and proposed vendors together, whereupon an executory contract of purchase and sale was entered into between the proposed purchaser and the proposed vendors at the price and on the terms of the option agreement.

"That as an inducement to the plaintiffs and others, holders of said option agreement, to accept the same and to undertake the finding of a purchaser of said property and stock, and to induce said parties to expend time and money in finding such purchaser, the said *Mineral Spring Company* and the said Charles A. Welch made and furnished to the holders of said option at or about the time of making of said option agreement a written statement, duly certified to by them, purporting to be an accurate account of the gross earnings and of the expenses and of the net earnings of the business of said company for three years prior to the execution of said option agreement, to wit, for the years 1900, 1901, and 1902, which statement each of the parties to said option agreement implicitly relied upon and on the face [faith?] of the same expended time and money as aforesaid."

These representations were carried into the executory contract with the proposed purchaser. They were not true in fact, and for this reason, upon discovery of their untruthfulness, the proposed purchaser refused to carry out or consummate his said executory contract or to close the purchase, whereby the respondents lost their four sevenths of one million dollars in the capital stock of a new corporation which the proposed purchaser intended to organize and which was

to take over the property; lost also the right to buy $77,000 of the first-mortgage bonds of this new company and $46,200 face value of its shares of stock for the sum of $69,300; all of which would have been of a value stated. Estberg, Phelps, and Ryan, the three original parties to the option agreement, refused to join in this action, therefore were made defendants with the *Mineral Spring Company* and Welch, but they did not answer.

Several answers were interposed by the appellants, but it will be only necessary to notice that the option agreement mentioned in the complaint was before the court as part of one or more of said answers, and that there was a plea of accord and satisfaction wherein it was averred that after the failure of this attempted sale the defendants gave and the plaintiffs received, on May 16, 1904, a new option for $1,400,000 on the same property in satisfaction of plaintiffs' demands described in the complaint arising under the first option.

The cause came on for trial, and the answering defendants objected to the reception of any evidence under the complaint for the reason that it failed to state a cause of action. This objection was overruled without argument and without prejudice and an exception taken. The answering defendants then moved for judgment on the pleadings, which was likewise overruled without argument and without prejudice and an exception taken. The plaintiffs offered evidence consisting of contracts, letters, and depositions. The trial made considerable progress and further hearing was continued until November 16, 1908, when plaintiffs' counsel made the following announcement in open court:

"I have decided to discontinue the action. I have become satisfied in talking with gentlemen upon the other side and counsel that the second option which was set up as a defense, and which in my judgment would be a waiver of every claim under the first option, was actually given, and from what I learn from them and through other sources I am satisfied of

that fact, and therefore I shall enter a discontinuance of the action."

Defendants' counsel requested opportunity to be heard on his motion for judgment on the pleadings and was heard. The circuit court made the following ruling:

"The court is of the opinion that a proper exercise of its discretion in this matter is the granting of the motion of the plaintiffs to discontinue. This accordingly overrules the defendants' motion to grant judgment on the pleadings."

Passing, without deciding, the question whether an option given for the purpose set forth in this complaint in the form of the option annexed to the answer would authorize the grantees therein to create other agents of the seller of equal authority with them by assigning to such persons who were in no sense purchasers of the property undivided interests in such option (31 Cyc. 1425 and cases in note; 2 Am. & Eng. Ency. of Law (3d ed.) 837, 838, 840; *McKinnon v. Vollmar,* 75 Wis. 82, 43 N. W. 800; *Kohl v. Beach,* 107 Wis. 409, 83 N. W. 657), we come to inquire what is the real nature of the cause of action attempted to be set forth. The complaint avers no breach of contract. It does aver that, by reason of false representations made by the appellants, respondents were damaged in that they were unable to make a sale and so earn their profits and in that they expended time and money in the effort to procure a purchaser. We consider it an action for unliquidated damages founded upon deceit and not an action for damages based upon obtaining money or property by fraud. After setting forth the object and purpose of the option and so limiting its scope it is averred that as an inducement to the plaintiffs and other holders of said option agreement to accept the same and to undertake the finding of a purchaser, etc., the said defendants, at or about the time of making such option agreement, made and furnished to the holders of said option agreement a written statement, etc., which statement each of the parties to the option agreement

implicitly relied upon.   It thus appears that the false state-
ment was made at the time of making the option agreement
(February 6, 1903) and to the then holders of the option
agreement and not to the plaintiffs, and that these holders,
Estberg, Phelps, and Ryan, implicitly relied upon the state-
ment.   Instead of the usual and necessary averment that the
misrepresentations were made to the plaintiffs; or made to a
designated third person with the intention that they be com-
municated to the plaintiffs; or so made to a class of which
plaintiffs were members; or so made to the public generally,—
in each case with the intention on the part of defendants that
plaintiffs should rely and act thereon and that plaintiffs did
so rely and act,—we have an averment that the misrepresen-
tations were made to plaintiffs' assignors as an inducement to
the plaintiffs and others, holders of the option.   The fact that
a written instrument runs to the vendee or obligee therein
named "and assigns" is not alone sufficient to give a right of
action to such assigns for a deceit perpetrated upon their as-
signors.   Nor is that fact sufficient to show that misrepresen-
tations made to and relied upon by the original grantees,
vendees, or obligees were intended by the maker thereof to be
communicated to or to influence the action of such "assigns."
Something more is requisite to this end, as above indicated.
From the facts stated, the conclusion that by reason of the
proposed option running to Estberg, Phelps, and Ryan and
their assigns, the misrepresentations made to Estberg, Phelps,
and Ryan were available as a cause of action in favor of any
person to whom Estberg, Phelps, and Ryan should assign the
option or any interest therein, although such person was not
a prospective purchaser of the property, is incorrect.   The
word "assigns" in the option given for the purpose and
under the circumstances stated means a purchaser ready,
able, and willing to buy, to whom Estberg, Phelps, and
Ryan might assign their option, and not the public gener-
ally, and not any person to whom Estberg, Phelps, and

Ryan might for other purposes assign an interest in the option. But in any event it appears that the misrepresentations were made to Estberg, Phelps, and Ryan prior to the time at which the plaintiffs acquired an interest in the option by assignment. Aside from any question of survival of actions, no right of action for deceit would pass to plaintiffs by reason of an assignment of the option under such circumstances. *Tyson v. Renney,* 89 Wis. 518, 61 N. W. 563, 62 N. W. 931; *Dayton v. Fargo,* 45 Mich. 153, 7 N. W. 758; 1 Bigelow, Fraud, p. 214, § 6; *Raymond v. S. P., A. & C. R. Co.* 21 Weekly Law Bull. 103. The persons to whom the alleged misrepresentations were made are not complaining. The proposed purchaser is not complaining, and the misrepresentations were not made to the plaintiffs. They do not run with the option and create a cause of action in favor of a person to whom the representations were not addressed but to whom the option was assigned and who is not a purchaser of the property. Nor would they be available as a cause of action in favor of an actual purchaser unless they were made to such purchaser by the vendor or by vendor's agent authorized so to do, or ratified by vendors. *Hindman v. First Nat. Bank,* 86 Fed. 1013; *S. C.* 98 Fed. 562, 48 L. R. A. 210; *S. C.* 112 Fed. 931, 57 L. R. A. 108. In that case, in order to receive a license to carry on the business of fire insurance in Kentucky, an insurance company falsely represented that it had about $248,000 on deposit in the First National Bank. The commissioner of insurance made inquiry of the bank and the latter corroborated the false statement of the insurance company. Relying on this the commissioner issued a license, and relying on the fact that the commissioner had issued the license and therefore the corporation had the requisite capital paid in, the plaintiff bought shares in the insurance company. On this showing it was held he could not recover. When the case came up again in 98 Fed. 562, there was added to the foregoing facts that the false statement of the bank was by

the act of the bank and the insurance company published in several newspapers and this with the intention of inducing the public to buy shares, the bank at the same time holding some of these shares as collateral. This consideration induced the court of appeals to hold the bank might be liable, TAFT, J., saying:

"Even if it be conceded that the plaintiff had no right to rely on the certificate to the insurance commissioner, the repetition of the contents of the certificate in newspaper publications by the bank and others for the very purpose of misleading purchasers of the stock is quite sufficient to hold the bank."

See, also, *Peek v. Gurney,* L. R. 6 H. L. 377; Cooley, Torts (2d ed.) 577; *Wells v. Cook,* 16 Ohio St. 67; *Hunnewell v. Duxbury,* 154 Mass. 286, 28 N. E. 267; *Fowler v. McCann,* 86 Wis. 427, 56 N. W. 1085; *Louis F. Fromer & Co. v. Stanley,* 95 Wis. 56, 69 N. W. 820.

At the time of the assignment of the interest in the option to plaintiffs on February 19, 1903, the right of action averred in this complaint did not survive and was not assignable under the statute then in force. *Allen v. Frawley,* 138 Wis. 295, 119 N. W. 565; *John V. Farwell Co. v. Wolf,* 96 Wis. 10, 70 N. W. 289, 71 N. W. 109; *Killen v. Barnes,* 106 Wis. 546, 82 N. W. 536. Assuming, without deciding, that the present statute (ch. 353, Laws of 1907: sec. 4253, Stats.) affects rights of action accruing prior to and existing at the date of the enactment of that law, still it could not be retroactive in the sense that an assignment of an otherwise nonassignable cause of action made several years before that law went into effect could be thereby made valid. We must therefore hold that the complaint fails to state a cause of action in favor of the plaintiffs therein, respondents here.

While ordinarily it is within the discretion of the trial court to permit the plaintiff to discontinue an action at law in which no counterclaim is interposed where the application

for leave to discontinue is timely made (*State ex rel. Milwaukee v. Ludwig,* 106 Wis. 226, 82 N. W. 159; *Anderson v. Horlick's M. M. Co.* 137 Wis. 569, 119 N. W. 342), yet where the complaint fails to state a cause of action and is challenged by demurrer and motion for judgment on the pleadings, and the plaintiff's counsel thereafter bases his request for a discontinuance not upon unexpected failure of evidence on his part, but upon what is in effect an admission that a plea in bar contained in the defendant's answer is true, and the trial court is again requested to dispose of the objections going to the sufficiency of the complaint before granting leave to discontinue, it is error to permit the discontinuance of the action instead of disposing of it on the other grounds before the court. Litigation should not be unnecessarily prolonged. The trial court should have disposed of the case on the motion earlier made rather than upon the later,—on that which would tend to define rights and finish litigation rather than upon that which would leave a case open for other, further, and perhaps fruitless and expensive litigation.

It is contended that the appellants having taxed costs on the discontinuance and collected and received the amount thereof are thereby barred or estopped from prosecuting this appeal from the judgment subsequently entered. If the costs were conditional, or if the appellants were entitled to other or greater costs on discontinuance than they would be on the judgment which they seek in its stead, or if the taking of costs were inconsistent with the claims which might be urged on the appeal, there would be force in this contention. As it is, the costs were something which the appellants were entitled to whether the judgment be one of discontinuance or one dismissing the action for other reasons. In that case the taking of costs is no bar to the appeal. *Fiedler v. Howard,* 99 Wis. 388, 75 N. W. 163; *Grand Rapids v. Bogoger,* 141 Wis. 530, 124 N. W. 659.

It follows that the judgment of the circuit court must be

reversed, and the cause remanded with, directions to enter judgment on the pleadings dismissing the complaint without costs in the court below.

*By the Court.*—Judgment reversed with costs, and the cause remanded with directions to dismiss the complaint.