BLAKE, Respondent, vs. MILLER, Appellant.

*June 7—October 10, 1922.*

*Limitation of actions: Concealment of prior fraud: Trustees: Duty of disclosure: Reliance: Intention of person making false statements.*

1. The fraudulent concealment of a cause of action will not prevent the running of the statute of limitations.
2. An action to recover damages because of false and fraudulent representations upon which the plaintiff relied and by which in 1909 he was induced to purchase stock in the defendant company, is barred by the statute of limitations. And although from 1913 to 1919 the misrepresentations were repeated and others made, the statute is still a bar, even if it be conceded that there existed between defendant M., president of the defendant company, who made and repeated the false statements, and the plaintiff a situation analogous to that existing between a trustee and a *cestui que trust,* as plaintiff had not intended to bring any action in relation to the fraud and did not in.fact learn of it until 1920.  *Ott v. Hood,* 152 Wis. 97, distinguished.
3. Unless representations which are false and fraudulent are made with the expectation that they are to be relied on, no remedial wrong is committed.

APPEAL from an order of the circuit court for Dane county: E. RAY STEVENS, Circuit Judge.  *Reversed.*

Demurrer.  The allegations of the complaint are that the plaintiff is a resident of Madison; that the defendant *George P. Miller,* at all times mentioned down to the summer of 1919, was a resident of Madison; that the defendant Oregon Yellow Fir Timber Company is a foreign corporation organized under the laws of the state of Oregon; that its principal office and place of business is Portland, Oregon, and that it has never been licensed to transact business within the state of Wisconsin; that the defendant *George P. Miller* was at all times mentioned in the complaint and still is the president of the defendant corporation; that the defendant corporation was organized May 4, 1908, with a capital stock of $240,000, divided into 2,400 shares of the

par value of $100 each; that the capital stock was subsequently increased to $400,000; that the plaintiff and *George P. Miller* were close personal friends; that they had an office together, and that the relationship existing between the plaintiff and said *George P. Miller* was one of trust and confidence, which continued down to the late spring of 1920; that *Miller* was a man of large experience in the lumber and timber industry and claimed to be an expert and experienced lumber and timber cruiser and estimator and a practical manufacturer of lumber and timber products; that in all the transactions referred to the plaintiff relied upon the statements and representations of said *Miller* and the defendant corporation as true and was repeatedly assured of the truth thereof by *Miller;* that all of the transactions set out in the complaint occurred within the state of Wisconsin. It is then alleged:

"That prior to the month of December, 1908, said *Miller,* he being then the president of the Oregon Yellow Fir Timber Company, stated to plaintiff that the corporation had been organized under the laws of the state of Oregon for the purpose of purchasing certain timber located in Lincoln county, Oregon, and controlled by the firm of Mann & Montgomery of Portland, Oregon; that the only reason why said timber could be purchased was because the said Mann & Montgomery had a large amount of money tied up in a bank in Portland which had temporarily suspended and that there was a general severe financial stringency on the Pacific coast; that all of said timber was located in Lincoln county, Oregon; that said Mann & Montgomery were the owners of the timber located upon—[descriptions omitted], for which they were to be paid on the basis of eighty cents (80c) per thousand feet of timber, and that said timber cruised 108,598,000 feet, and that the purchase price was eighty-six thousand eight hundred seventy-eight and 40-100 dollars ($86,878.40), which was to be paid for by the issuance of 300 shares of stock in said company and the balance in cash; that said Mann & Montgomery had options to purchase from homesteaders and others other tracts adjoining the lands hereinbefore

described, and that the same would be turned over to the company on the basis of eighty cents (80c.) per thousand feet; that all expense of cruising the same, together with all charges, such as attorneys' fees, etc., were to be paid by Mann & Montgomery; that said *Miller* had personally gone over each and every part of the lands owned or upon which the said Mann & Montgomery had options and which were to be turned over to said company, and that he knew that the facts were as represented and that said timber was the finest body of timber on the coast; that the cruise of said timber was as represented and was accurate; that no trees had been included in the cruise except trees twenty-four inches in diameter thirty inches from the ground; that the trees not included in the estimate would be sufficient to pay ten per cent. interest on the money invested; that no stock was to be issued except for money actually paid on the basis of eighty cents per thousand feet of timber; that said *Miller* and Oftelie were to receive five cents per thousand, the same to be paid by Mann & Montgomery; and which said sum was to compensate them for their expense and time; that they were to receive no further compensation of any kind; that *Miller* personally had gone over all of said timber and that the cruise was guaranteed, and that *Miller* personally stood back of the cruise because of the five-cent brokerage; that there were no commissions and no secret profits; that no stock would be sold for less than eighty cents per thousand feet; that it was necessary to have a compact body of timber in order to attract investors looking for an operating location; that with the timber owned by Mann & Montgomery and with that upon which they held options and which would be immediately transferred to the company the said corporation would have approximately three hundred million feet of timber in a well collected solid body; that if the timber was bunched the value more than doubled, whereas if the timber was not bunched and was not in a body it was hard to dispose of and the value of the same was much lower; that all of said timber lay within nine miles of the ocean; that a navigable stream lay but a short distance from said timber; that said stream split, one branch going toward the south and the other toward the north, and that one of the branches ran through the timber so that the same could be readily

logged and the stream would carry the logs to the ocean; that all logs could be brought to the stream by a steam jammer; that the timber was within easy access of two lines of railroad; that there was no danger of loss by fire by reason of the location; that the timber was beautiful sound yellow fir with about ten per cent. of cedar and five per cent. of hemlock; that there was no chance of any loss; that they could take then a profit of thirty-three and one-third per cent. over the purchase price.

"That the above statements and representations were repeatedly made by said *Miller* and by said Oregon Yellow Fir Timber Company to the plaintiff and that the plaintiff relied thereon, and that in so relying thereon paid to the said *Miller* as an officer of said corporation, on or about December 10, 1908, the sum of four thousand dollars ($4,000) to purchase stock in said Oregon Yellow Fir Timber Company, which said stock was issued and represented by certificate No. 22 for forty (40) shares, and that subsequent thereto and on the solicitation of the said *Miller,* and relying upon the said representations hereinbefore set forth, and on or about January 21, 1909, plaintiff paid to the said *Miller* as an officer of said corporation, for the purpose of purchasing stock in said Oregon Yellow Fir Timber Company, the further sum of four thousand dollars ($4,000), which said stock was issued to plaintiff and is represented by certificate No. 35 for forty (40) shares; that the plaintiff is still the owner and holder of said stock; that there is now no market value for the same and that the plaintiff is unable to dispose of the same, and that the value of said stock does not exceed, as plaintiff is informed and verily believes, and so charges the fact to be, in excess of four thousand dollars ($4,000).

"That all of the representations hereinbefore set forth were made by the said *Miller* and that at the time of said representations said *Miller* was the president and authorized representative of the Oregon Yellow Fir Timber Company and was engaged in the sale of stock for said corporation within the limits of the state of Wisconsin; that said subscriptions were accepted and the stock certificates issued, and the money paid therefor within the state of Wisconsin."

Each of the representations and statements made is alleged with particularity to be false.

"That subsequent to the purchase of said stock and repeatedly prior to the summer of 1913, and particularly during the summer of 1913 and subsequent thereto, and during the spring of 1919, and at various other times between said dates, the plaintiff requested information from the said *Miller*, both as an individual and as a representative and officer of said Oregon Yellow Fir Timber Company, relative to the said tract of timber, as to the conditions surrounding the same and the possibility of the sale of said timber, and that the said *Miller* during all of said times repeatedly stated to said plaintiff, both as an individual and as an officer of the Oregon Yellow Fir Timber Company, that each and every representation as hereinbefore set forth which had heretofore been made to the plaintiff by the said *Miller* was true and that the plaintiff could rely thereon; that the said *Miller* knew of his own knowledge that the timber was as had been represented and that it was increasing in value and was worth more than it was at the time of the purchase; that the timber was valuable because it was located in a body and could be easily logged; that the cruises would overrun, and that the only reason that the timber had not been sold was because of the extraordinary conditions relative to shipping, the war, and other matters which could not possibly have been expected; that the plaintiff should not under any circumstances sell or dispose of his stock; that in the spring of 1918 said Oregon Yellow Fir Timber Company and the said *Miller* represented that there had been paid to the corporation by the sale of stock two hundred thirty-nine thousand two hundred dollars ($239,200) and that the corporation had approximately two hundred ninety million feet of timber, and that said timber was located so as to be readily accessible and was bunched, and that during the summer of 1913 said *Miller* stated to the plaintiff that he could absolutely rely upon the statements which had been made by the said *Miller* to him at the time of the purchase of said stock as absolutely true and that there was no possible chance for losing; that plaintiff, having confidence in said *Miller* and said Oregon Yellow Fir Timber Company, relied upon said

representations and refrained from any investigation or from ascertaining that the facts as represented at the time of the purchase of said stock were false, and refrained from instituting any action or actions against either said *Miller* or the Oregon Yellow Fir Timber Company by reason of the misrepresentations made to him at the time of the purchase of said stock; that said representations so made subsequent to the purchase of said stock as hereinbefore set forth were false, and so known to be false by the said *Miller* and said Oregon Yellow Fir Timber Company, in that said statements made to the said *Blake* at the time of the purchase of said stock were not true as is hereinbefore more particularly set forth; that the said *Miller* knew that the said timber was not increasing in value; that said timber was not located in a body but was scattered; that it could not be readily logged; that there had been paid in by the sale of said stock but two hundred twenty-three thousand five hundred dollars ($223,500); that the company did not have approximately two hundred ninety million feet of timber; that the reasons why said timber could not be sold was because of the fact that it was poorly located and the price paid for it was too high, and that the said representations so made at the time of the sale of said stock were false in the particulars as hereinbefore more specifically set forth.

"That relying upon said representations said plaintiff continued to hold said stock although he could have sold said stock prior to the spring of 1920 at approximately the par value thereof, as he is informed and believes; that said stock at the present time has no market value, and that, as plaintiff is informed and verily believes, said stock is not worth to exceed fifty per cent. of the par value thereof.

"That plaintiff was not aware and had no suspicions that the said representations made by the said *Miller,* or any of them, either made at the time of the purchase of said stock or subsequent thereto, as hereinbefore set forth, were not true, until the late spring of 1920; that plaintiff had not been to the Pacific coast since the date of the purchase of said stock; that it was impossible for plaintiff to personally investigate said holdings because of lack of knowledge of timber or the timber business; and that a cruise thereof could not have been had except at great expense;

that one of the stockholders of said corporation was requested to go, in the spring of 1920, to Oregon to ascertain what he could with reference to conditions, and that upon his return plaintiff first was advised that the said representations were false, and that thereupon plaintiff caused a further investigation to be made; that immediately upon ascertaining that said representations were false plaintiff notified said *Miller* and said Oregon Fir Timber Company as to the falsity of said representations and demanded satisfaction because of the loss and damage sustained by plaintiff on account thereof, but that said *Miller* and said Oregon Yellow Fir Timber Company refused, and still refuse, any satisfaction of any kind to the plaintiff by reason thereof; that by reason of the facts as hereinbefore set forth said plaintiff has been damaged in the sum of twenty-four thousand dollars ($24,000)."

The defendant *Miller* demurred to the complaint on the grounds (1st) that it appears upon the face thereof that the complaint does not state facts sufficient to constitute a cause of action; (2d) for the reason that it appears upon the face of the complaint that the action was not commenced within the time limited by law, that is, within the time limited by sec. 4222, Stats. There was also a demurrer upon the same grounds by the defendant corporation. The trial court overruled both demurrers, and from the order entered in accordance therewith the defendant *Miller* appeals.

For the appellant there were briefs by *Olin, Butler, Thomas, Stebbins & Stroud* of Madison, and oral argument by *B. H. Stebbins.*

For the respondent there was a brief by *Richmond, Jackman, Wilkie & Toebaas* of Madison, and oral argument by *Harold M. Wilkie.*

The following opinion was filed July 8, 1922:

ROSENBERRY, J. Inspection of the complaint shows that the last stock purchased in the defendant company by the plaintiff was on January 21, 1909. By sec. 4206, Stats., it

is provided that civil actions can only be commenced within the period prescribed by ch. 177, Stats.  Sec. 4222 of ch. 177 provides that an action to recover damages for an injury to property, real or personal, or for an injury to the person, character, or rights of another, not arising on contract, may be begun within six years, except an action for relief on the ground of fraud in a case which was, on and before the 28th day of February, A. D. 1857, cognizable solely by the court of chancery, in which case the cause of action is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud.

There is no claim in this case that the cause of action set out in the complaint is one cognizable solely by a court of chancery.  It is conceded that the original cause of action which arose by reason of the false and fraudulent representations made, upon which the plaintiff relied and by virtue of which he was induced to purchase stock in the defendant company, is barred by the statute of limitations. The contention here is, however, that by reason of the repetition of the representations and the making of other representations between the years 1913 and 1919 the plaintiff refrained from commencing a 'suit or taking any action within the period limited by statute upon the original fraud and thus a new cause of action was created, as to which new cause of action the statute of limitations has not yet run, this action being commenced July 3, 1920.

It is well established in this state that fraudulent concealment of a cause of action will not prevent the running of the statute of limitations.  The question has been fully and exhaustively discussed.  *Pietsch v. Milbrath,* 123 Wis. 647, 101 N. W. 388, 102 N. W. 342; *Williams v. J. L. Gates L. Co.* 146 Wis. 55, 130 N. W. 880; *Ott v. Hood,* 152 Wis. 97, 139 N. W. 762.

It is the contention of the plaintiff here that there existed between the plaintiff and the defendant *Miller* such a relation of trust and confidence as to make the principle laid

down in *Ott v. Hood,* 152 Wis. 97, 139 N. W. 762, applicable. In that case an attorney had collected money belonging to his client. In response to repeated inquiries he represented to his client that the money had not been collected. The money was in fact collected July 28, 1892, and the client never learned anything to the contrary until November 15, 1910. The court held that the original cause of action was barred by the statute. After calling attention to the fact that the relationship between the parties was analogous to that of trustee and *cestui que trust,* the court said:

"When appellant asked respondent about the status of the matters placed in his hands, it was his duty to make a full disclosure. According to the complaint he breached that duty, by reason of which, if plaintiff reasonably relied thereon until the six-year statute of limitations had run upon her right of action to recover on contract, she lost it. In other words, she was pecuniarily damaged by such breach to the extent of the money respondent should have paid over to her and interest. The duty was not merely a moral obligation. It was a duty imposed by the common law and is grounded in common honesty. Why then is not violation of it, working damage without efficient fault of the one damnified, remediable? This court, emphatically, answered that question in *Ludington v. Patton, supra* [111 Wis. 208, 86 N. W. 571]. While vindicating the law as we have before stated it, as regards the unconditional application of statutes of limitations, it was held that if a person holding relations of trust and confidence with another and charged with the duty to guard such other's pecuniary interests, induces such other to take such a course as to lose a right against such person, that of itself is a remediable wrong, starting the six-year statute of limitations running as to it."

The rule thus stated was held applicable to the facts in the case of *Ott v. Hood, supra.* The facts in this case clearly distinguish it from the case of *Ott v. Hood.* Even if it be conceded—a point not here decided—that there existed between the defendant *Miller,* as president of the defendant company, and the plaintiff, a stockholder, a duty analogous

to that existing between a trustee and *cestui que trust,* there is no allegation showing that the plaintiff ever intended to bring an action against *Miller* or the defendant company or to take action of any kind in respect thereto. The allegation is that he knew nothing of the fraud until the late spring of 1920. How then could the plaintiff have relied upon the representations made between 1913 and 1919? At most such representations amounted to active concealment of the true state of affairs. In *Ott v. Hood* the plaintiff knew that the money was due her. She demanded an accounting therefor from her attorney, in response to which the false representations complained of were made. Just how a person who is, so to speak, asleep, can without being awakened be induced by false representations to remain asleep, is a very subtle proposition to say the least. If the plaintiff had contemplated action of any sort and the defendant *Miller* had intervened and ·by means of false representations had induced the plaintiff to refrain from acting, a different situation would be presented. No allegation of that character appears in the complaint. Sec. 4222, Stats., has been interpreted as being a legislative command that mere concealment of a prior fraud shall not operate to extend the running of the statute. It has been suggested in ·view of that fact that if a different rule is to be adopted it should be done by legislative action. Although it is now many years since the rule was announced and the suggestion made, the legislature has taken no action, and we must therefore assume that the interpretation placed upon the section by the court is in accordance with the legislative purpose and carries out the legislative intent. There are in other jurisdictions statutes and decisions to the contrary, but the question is no longer an open one in this state.

It is also argued on behalf of plaintiff that it appears from the allegations of the complaint that but for the false and fraudulent representations made by the defendant *Miller* during the interim between 1913 and 1919 the plaintiff might have disposed of his stock in the defendant

company at par; that he did not dispose of it or attempt to dispose of it, relying upon the false representations made by the defendant *Miller;* that it is now worth not to exceed fifty cents on the dollar, and that the plaintiff has thereby sustained a loss accordingly.

It is urged in response to this suggestion, on behalf of the defendant *Miller,* that to admit that such a cause of action exists is to admit that plaintiff by perpetrating a fraud on someone else, there being no allegation that the stock was ever worth more than fifty cents on the dollar, might recoup his loss, and that he may recover in this action because he was induced to refrain from defrauding a third person. Without going into consideration of the difference between the sale value and the market value and the various claims set up in relation thereto by the parties, it seems apparent that no cause of action is stated for the reason that it does not appear that the alleged false and fraudulent representations were made by the defendant *Miller* with the knowledge or expectation that they were to be acted upon by any one. Unless representations which are false and fraudulent are made with the expectation that they are to be acted upon and unless they are acted and relied upon, no remedial wrong is committed. *Puffer v. Welch,* 144 Wis. 506, 129 N. W. 525; 26 Corp. Jur. p. 1121, § 46, and cases cited; *Louis F. Fromer & Co. v. Stanley,* 95 Wis. 56, 69 N. W. 820; *Francois v. Cady L. Co.* 149 Wis. 115, 135 N. W. 484.

The allegations of the complaint do not show, and from the nature of the circumstances cannot be made to show, that the representations complained of were made by *Miller* with the knowledge or expectation that action on the part of the plaintiff of any sort would be induced or that they might be acted and relied upon for any purpose.

"This court has gone, perhaps, as far as any court in holding that false representations of facts, *which have induced* the making of a contract, may be actionable, although

not shown to have been made wilfully or with fraudulent intent." *Louis F. Fromer & Co. v. Stanley,* 95 Wis. 56, 63, 69 N. W. 820.

But we find no case where it has been held that a violation of the moral obligation to speak the truth is ground for a civil action unless it was intended thereby to induce action by the plaintiff which results in his damage. *Hindman v. First Nat. Bank,* 112 Fed. 931, 57 L. R. A. 108; *Cheney v. Dickinson,* 172 Fed. 109, 28 L. R. A. n. s. 359.

The representations here complained of were not made in connection with the sale of the stock, were not made with reference to any proposed action on the part of the plaintiff of any sort or description. If the plaintiff had proposed to sell his stock and *Miller* had knowledge of that fact and for the purpose of preventing the sale had made the representations complained of, a different situation would be presented. It is conceivable at least that there might be circumstances of that nature under which the defendant *Miller* would be liable. Here the plaintiff neither did nor refrained from doing anything that he would otherwise have done or refrained from doing if the representations had not been made. How can it be said, therefore, that the plaintiff relied upon and acted upon the representations made? We think the trial court was in error in holding that upon this aspect of the case a cause of action was stated. The demurrer as to the defendant *Miller* should have been sustained upon both aspects of the complaint.

*By the Court.*—The order appealed from is reversed as to the defendant *Miller,* and the cause remanded with directions to sustain the demurrer as to the defendant *Miller* and for further proceedings according to law.

OWEN, J., took no part.

A motion for a rehearing was denied, with $25 costs, on October 10, 1922.