RUSSELL, Appellant, vs. ANDRAE, Respondent.

*February 5 — February 24, 1891.*

*Land broker: Commissions: Estoppel.*

1. Where an owner of lands, who had given to C. an option for the purchase thereof, employed A. as an agent to sell them for him on commission, and he employed R. as a sub-agent, and R. associated M. with himself on shares; and C. having surrendered his option before it expired, and M. having found a customer who desired an option and having reported that fact to A. though he had forgotten the name, thereupon A. inserted the name of M. in the place of C. in one place in the surrendered option, leaving that of C. in the other places, and gave it to him for use with his customer, but it was not used; and his customer on learning who was the owner, bought the land from him, and the latter paid to A. the agreed commission. *Held*, in an action by R. against A. to recover his share of the commission, that such taking of the option by M. in his own name did not change his position from that of an agent for selling to that of an intending purchaser, so as to estop him from claiming his share of the commission.

2. Though M. violated the instructions given by the owner to A. by asking a greater price than was fixed by him, yet, the owner having waived any objection on that account by voluntarily paying the agreed commission to A., that fact did not estop R. from claiming his share thereof.

APPEAL from the Circuit Court for *Columbia* County.

In 1886 one McGregor was the owner of a large quantity

of pine lands in the northern part of this state. In August of that year he executed to the defendant, *Andrae*, a writing, appointing the latter his agent to sell any or all of such lands, and agreed therein to pay him ten per cent. commissions on all sales so made, which should be approved by the owner. The price fixed by McGregor for all the lands was $30,000. In December following, the defendant engaged *Russell*, the plaintiff, to assist him in making such sales, and agreed that, if plaintiff found a purchaser, he (*Andrae*) would pay him therefor one-third of the commissions received from McGregor. In January, 1887, the plaintiff associated with himself one Malick to assist in finding a purchaser of the lands (*Andrae* consenting thereto), and agreed, if Malick found such purchaser, to pay him for his services one half the amount he should receive from *Andrae*. Malick thereupon advertised the land for sale in the Milwaukee Sentinel, by means of which advertisement Mr. Youmans, of Neilsville, was first informed that the lands were for sale, and immediately opened negotiations with Malick looking to a purchase thereof. In March, 1887, Youmans entered into direct negotiations with McGregor, which resulted, the following summer, in a sale of the lands by McGregor to him for $30,000, or nearly that sum. McGregor thereupon paid Andrae $3,000 as and for his commissions on such sale.

The plaintiff brought this action to recover one third of the commissions so received by defendant, *Andrae*, to wit, $1,000. On the trial, and at the close of the plaintiff's testimony, which proves the above facts, a motion by defendant for a nonsuit was granted. Judgment was entered accordingly, after a motion for a new trial had been overruled.

A further statement of the testimony, and the ground on which the nonsuit was granted, is contained in the opinion. The plaintiff appeals from the judgment which dismisses his complaint, with costs.

For the appellant there was a brief by *Cate, Jones & Sanborn,* and oral argument by *D. Lloyd Jones.*

For the respondent there was a brief by *Raymond & Brennan,* and oral argument by *John H. Brennan.* They claimed that Malick had abandoned his character as agent and assumed that of purchaser; that the plaintiff knew of the facts and apparently joined with him in a plan to sell at a higher price and appropriate the excess; and that they were both unfaithful to their duties as agents, and thereby forfeited all right to compensation. Mechem, Agency, § 214, and cases cited; 2 Lawson's Rights & Remedies, secs. 81, 82; 2 Am. & Eng. Ency. of Law, 369; *Brown v. McGrau,* 14 Pet. 494; Story, Con. sec. 359; *Meyer v. Hanchett,* 39 Wis. 419; *Keighler v. Savage Mfg. Co.* 12 Md. 383; *People v. Town Board,* 11 Mich. 222; *Lea v. Carpenter,* 16 Ohio, 412; *Vennum v. Gregory,* 21 Iowa, 326; *Cleveland & St. L. R. Co. v. Pattison,* 15 Ind. 70; *Porter v. Silvers,* 35 Ind. 295; *Fisher v. Dynes,* 62 Ind. 348; *Sumner v. Reichenicker,* 9 Kans. 320; *Segar v. Parrish,* 20 Gratt. 672; *Brannan v. Strauss,* 75 Ill. 234; *Myers v. Walker,* 31 Ill. 353; *Henderson v. Hydraulic Works,* 9 Phil. (Pa.), 100; *Smith v. Crews,* 2 Mo. App. 269; *Sawyer v. Mayhew,* 51 Me. 398; *Tyrrell v. Bank,* 10 H. L. 26; *Hoyt v. Shipherd,* 70 Ill. 309; *Jones v. Hoyt,* 25 Conn. 374; *Fraser v. Wyckoff,* 63 N. Y. 445; *Pratt v. Patterson,* 112 Pa. St. 475; *Bell v. McConnell,* 37 Ohio St. 396; *Bennett v. Kidder,* 5 Daly, 512; *Hammond v. Holiday,* 1 C. & P. 384; *White v. Chapman,* 1 Stark. 113; *Hurst v. Holding,* 3 Taunt. 32. One cannot at the same time be agent of the vendor to make sale, and purchaser of the property, but in assuming the latter character he abandons the former. *Stewart v. Mather,* 32 Wis. 344; *Grant v. Hardy,* 38 id. 668.

LYON, J. Were the facts contained in the foregoing statement all there is of the case, there would be no doubt that the plaintiff, *Russell,* through Malick, fully earned the com-

pensation for finding a purchaser of McGregor's land, stip-
ulated by the defendant, *Andrae*, to be paid him therefor,
and would be entitled to recover the same in this action.
But there are other facts disclosed by the testimony upon
which the court granted the nonsuit. These will now be
stated.

As soon as Youmans, who afterwards purchased the lands,
saw Malick's advertisement in the Milwaukee Sentinel, and
on February 12, 1887, he telegraphed Malick at Stevens
Point for descriptions of the lands, terms of sale, and for
an option, and asking him if he would give the option at
the price of $30,000. Malick answered this telegram about
a month later, stating price at $37,500. Youmans re-
plied March 15th, again requesting option, lowest price,
etc., and expressing an intention to examine the lands.
Malick then sent him the plats thereof, but told him there
was an outstanding option. This option, which was in writ-
ing signed by McGregor, was given to one Cooledge, and,
by its terms, would expire March 29th. Cooledge surren-
dered his option before it expired, and *Andrae* had it.
About a week before it would have expired, Malick told
*Andrae* he had found a customer for the lands, but had for-
gotten his name, and that such customer wanted an option
on them. Thereupon *Andrae*, of his own motion, struck
out Cooledge's name where it first occurred in the option,
and inserted Malick's name in place of it, leaving Cooledge's
name therein in two other places; and delivered the option
to Malick, telling him that it would answer the required
purpose until an extension thereof could be procured from
McGregor, to whom he made application therefor. The in-
strument as thus altered, after giving Malick the refusal of
the lands, reads as follows: " The said *Cooledge* can buy
the said lands at any time within thirty-two days from this
date, and I will cause a good and sufficient deed, free from
all legal incumbrances, to be executed to the said *Cooledge*

upon the payment to me of the sum of $30,000." It does not appear that Malick made any use of the option, or did anything after receiving it relating to a sale of the lands.

The learned circuit judge granted the nonsuit on the sole ground that, by accepting the option, Malick changed his position from that of an agent to sell the lands to a proposed purchaser thereof, and thus defeated the right of his principal, *Russell*, to recover the agreed compensation for finding a purchaser. We think this an erroneous ruling, for several reasons: (1) The option was *functus officio* by reason of its surrender by Cooledge, and probably conferred no rights upon Malick for that reason. (2) It does not appear that *Andrae* had any authority from McGregor to grant an option on the lands. Indeed, it was understood by both Malick and *Andrae* that the latter had not, for they then agreed to send to McGregor for an extension thereof, and did so, which would not have been done had they supposed *Andrae* had power to give an option. (3) The option, in its mutilated condition, could not have been enforced, for it gave what is termed therein a refusal of the lands to Malick, and gave all the fruits thereof to Cooledge. It could not have been enforced, were it otherwise binding, without a reformation thereof, and, on the facts here proved, no court would have reformed it at the suit of Malick, but only at the suit of Youmans, for whose benefit it was intended. (4) The testimony is undisputed that it was given for the sole purpose of facilitating the sale of the lands to Youmans. Malick had no idea of purchasing the lands, and *Andrae* did not suppose that he had. There is no legal objection to the admission of parol testimony to show the true character of the transaction. Agents are frequently invested by their principals with the title to property, for convenience in making sales thereof, and we are aware of no rule of law which excludes parol testimony to show the purpose of the transaction when proof of it becomes necessary.

For the above reasons, we think the court erred in holding that the acceptance of the option by Malick defeats this action.

The learned counsel for the defendant argued with much earnestness and ability that, conceding the court gave an unsound reason for granting the nonsuit, there still remains a valid reason why it should not be disturbed. The price fixed by McGregor for the whole of his land was $30,000. *Andrae* informed *Russell* that McGregor desired no larger price should be demanded, and instructed him accordingly. Malick violated this instruction, and asked Youmans $37,500 for the lands. Because he did so, counsel maintains that *Russell* cannot recover against *Andrae* any commissions on the sale, notwithstanding he, through Malick, found a purchaser. Assuming, for the purposes of the case, that an agent to sell property, who violates his instructions, cannot recover commissions, we think the rule has no application here. Had *Andrae* brought an action against McGregor to recover his commissions, the rule would have been applicable, and Malick's violation of McGregor's instruction would be imputed to *Andrae*, and would defeat a recovery. But such violated instruction was the instruction of McGregor, not *Andrae*, and McGregor alone was liable to be injured by its violation. He alone was in a position to assert it as a defense to any claim for commissions. It was also competent for him to waive the violation of his instruction, and he did waive it by paying *Andrae* the stipulated commission which *Russell*, through Malick, had earned for him. Such waiver binds *Andrae*, *Russell*, and Malick. It estops *Andrae* from asserting such violation of McGregor's instruction as a defense to this action, and would estop *Russell*, after he receives his commission, from asserting it in an action brought by Malick to recover his stipulated share of such commission. The opposite rule would allow *Andrae* to retain money received by him for

*Russell's* services, through Malick, which he had agreed to pay *Russell*, because the latter had violated an instruction of McGregor, which violation McGregor had fully waived, as he lawfully might. The injustice of such a rule is obvious, and it is rejected without hesitation.

. The judgment of the circuit court must be reversed, and the cause will be remanded for a new trial.

*By the Court.*— Ordered accordingly.

