ISAACS, Appellant, vs. BARDON, Respondent.

*March 13—April 1, 1902.*

*Vendor and purchaser: Reasonable time for recording plat: Rescission: Interest: Laches.*

1. A contract for the sale of certain lots "in B.'s division of Ashland" acknowledged payment of the whole purchase price except $1, which was to be paid "when the deed is executed and delivered." The vendor covenanted to convey the premises on demand after the payment of the $1. The contract recited that the plat of the land had not been recorded, and stated that "it is the purpose of this contract that it be a bond for a deed to be executed . . . whenever said plat is recorded." The purchaser was in possession under a prior contract, and had made improvements. *Held*, that there was reserved to the vendor only a reasonable time within which he should not be compelled to record the plat and convey the lots according to it, and that after nine years plaintiff's right to such conveyance was absolute.

2. Where, in such case, after lapse of nine years the vendor refused upon demand to record the plat or to execute a deed, and at the

trial declared that he would not convey otherwise than by metes and bounds, the purchaser was entitled to an absolute rescission of the contract, and to recover back that which he had paid, together with the value of his improvements, with interest from the date of notice of his election to rescind.

3. In such a case plaintiff was under no duty to act until he was notified of some denial of his rights by defendant, and his failure to do so for nine years, during which time he was in quiet possession and the vendor's position was in no wise changed, was not laches.

APPEAL from a judgment of the circuit court for Ashland county: JOHN K. PARISH, Circuit Judge. *Reversed.*

In July, 1887, during a speculative boom in the city of Ashland, the plaintiff, a resident of Madison, purchased from the defendant, a large owner of property in Ashland, property described as lots 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12 in block 11 of *Bardon's* division of Ashland, "which plat is not yet of record"; paying $300 down, and taking land contract containing that description. That plat covered 160 acres of land southeasterly of the settled part of Ashland. Plaintiff having completed his payments of $2,000, he in February, 1890, accepted, at the request of the defendant, a bond for a deed, instead of a deed, which bond was in the ordinary form of land contract, certifying sale at the price of $2,000 of the same described lots, acknowledging payment of $1,999, and obligation to pay the remaining $1 upon delivery of deed; also reciting that the said plat was then not recorded yet, and containing the clause, "It is the purpose of this contract that it be a bond for a deed to be executed by said *Bardon,* or his legal representatives or heirs, whenever said plat is recorded." The covenant of the defendant, as party of the first part, was to convey the described premises on demand after payment of the remaining $1. The plaintiff, during pendency of the first contract, cleared the stumps out of the lots at an expense of $52.50, built two houses thereon at a cost of about $1,000, and collected rents therefrom until 1899, without any demand

on the part of the defendant to complete the purchase, nor on the part of the plaintiff to make conveyance.

In 1897 the plaintiff received some not very definite information that the idea of recording any plat had been abandoned by the defendant, and made inquiry and protest by letter, defendant's reply to which is not in evidence. It appears as a fact that the defendant had fenced off nearly the whole of the proposed plat, cleared the stumps therefrom, and rented the same as a farm, leaving unfenced a street giving access to plaintiff's lots. In September, 1899, the plaintiff caused to be served on the defendant a written communication stating that he had desired for a long time that the defendant comply with the agreement made in July, 1887, and that of February 7, 1890; that the failure to record the plat and make a deed had caused him much damage and inconvenience,—and making formal demand that defendant forthwith record the division plat mentioned in said agreements, and that he forthwith make a deed; also tendering him the remaining $1 of the purchase price. In February, 1900, Mr. McCloud, as attorney for the plaintiff, made a further personal demand upon the defendant that he have the plat of *Bardon's* division to Ashland recorded, and give plaintiff a deed of the lots described in his agreement, and tendered him again the $1. His testimony is that *Mr. Bardon* said he would not record the plat or give a deed.

Thereafter, on December 1, 1900, Mr. McCloud, an attorney for the plaintiff, notified *Bardon,* by delivering to him a written notice, that the plaintiff rescinded the contract for purchase, and then and there tendered back to him a release deed from the plaintiff of all interest therein, and demanded payment of the moneys paid for the lots, with interest from date of payment, and the amount of improvements that had been made. Plaintiff also did all that he could to surrender possession of the lots to the defendant, and since then has exercised no possession or control over them. This demand was

refused, and the present action brought to recover the moneys paid by plaintiff in purchase of the lots, with interest, and the value of the improvements placed thereon, with interest on the same from the time of making them, less the net rents received by plaintiff above costs of collection, repair, and taxes.

At the trial defendant persisted in determination not to record plat or to convey otherwise than by metes and bounds. The court denied the motion to direct a verdict in favor of the plaintiff, and directed a verdict in favor of the defendant, whereon judgment for the defendant was entered, from which the plaintiff appeals.

For the appellant there was a brief by *Geo. H. McCloud,* attorney, and *A. W. Sanborn,* of counsel, and oral argument by *Mr. Sanborn.* They argued, among other things, that the contract contains an express agreement or covenant to record the plat. There is nothing unexpressed except the time. The law presumes a reasonable time. No particular form of words is necessary to constitute a covenant. 8 Am. & Eng. Ency. of Law (2d ed.), 55; *Johnson v. Hollensworth,* 48 Mich. 140; *Marshall v. Craig,* 1 Bibb (Ky.), 379. Several covenants may be embodied in a single sentence or a single promise. *Johnson v. Hollensworth,* 48 Mich. 140; *Matteson v. Scofield,* 27 Wis. 671. It was the duty of the defendant to record the plat *without a demand,* before plaintiff could be required to demand a deed. If the delay on the part of the plaintiff has been caused by the act of the defendant, the latter cannot plead the plaintiff's laches as a bar to the suit. 18 Am. & Eng. Ency. of Law (2d ed.), 111; *Callender v. Colegrove,* 17 Conn. 1; *Ditto v. Harding,* 73 Ill. 117. So long as the relative positions of the parties are not altered to defendant's prejudice, delay is of very little consequence. 18 Am. & Eng. Ency. of Law (2d ed.), 101; *Nudd v. Powers,* 136 Mass. 273; *Stewart v. Stewart,* 83 Wis. 364, 372;

*Coryell v. Klehm,* 157 Ill. 462; *Wahl v. Zoelck,* 178 Ill. 158; 18 Am. & Eng. Ency. of Law (2d ed.), 119, 120; *Fawcett v. Fawcett,* 85 Wis. 332–336. Laches will not be imputed to one in peaceable possession of property for delay in resorting to the courts to establish his legal title. 18 Am. & Eng. Ency. of Law (2d ed.), 125; *Farmers' & M. Bank v. Detroit,* 12 Mich. 445.

For the respondent there was a brief by *Tomkins & Tomkins,* and oral argument by *W. M. Tomkins* and *R. Sleight.* They contended, *inter alia,* if there was an implied contract it was to record the plat when the circumstances were such as to warrant it. The undisputed evidence shows that the plaintiff bought the lots in question during the time of the notorious Ashland boom, when it was believed by both parties that there would be a great demand for lots in the Bardon division. The boom subsided and from that day to this there has been no sale for lots in that locality. It would seem that the parties in this case had purposely left out any promise to record the plat, for the reason that it was uncertain when the conditions would be such as to warrant it. No covenant will be implied when purposely withheld. *Bruce v. Fulton Nat. Bank,* 79 N. Y. 154. The laches which defendant claims should estop plaintiff from recovering in this action, is not so much laches as the acquiescence in, or placing the same construction as defendant upon, an implied promise, if such there was, that the plat should be recorded when the exigencies of the case demanded it and not before.

DODGE, J. The rights of the parties must depend upon the second contract, made in February, 1890; for, whatever may have been their respective rights and duties prior to that time, they voluntarily entered into that agreement to control for the future. That instrument recognizes the purchase by the plaintiff of certain specified lots upon a plat, and the payment of the full purchase price therefor, except $1, and con-

tains an absolute covenant on the part of the defendant that, in case the remaining $1 of purchase price be paid "at the times and in the manner above specified, he will, on demand, thereafter cause to be executed and delivered to the said party of the second part, or his legal representatives, a good and sufficient deed, in fee simple, of the premises above described." The time of payment of this $1 was to be "when the deed is executed and delivered." From these two provisions it cannot be doubted that the plaintiff would have been entitled to his deed at any time when he demanded the same; the $1 payment being, of course, merely formal, but yet a condition which he must perform. The document evidenced the fact that the whole equitable title had passed to the plaintiff, and that a conveyance was to be at his option. This clear obligation is modified by the interpolation of the clause, "It is the purpose of this contract that it be a bond for a deed to be executed by said *Bardon,* or his legal representatives or heirs, whenever said plat is recorded." It is inconceivable, however, that the parties, after the sale by one of certain premises, and the full payment therefor by the other, accompanied by possession and improvements thereon, could have intended that the plaintiff's legal title, necessary to enable him to sell the lots, should be indefinitely postponed, and his rights as an owner placed wholly at the discretion and option of the other party. There being some measure of ambiguity as to the extent to which the absolute undertaking by defendant to convey upon demand is modified by the clause last quoted, the situation occupied by the parties in February, 1890, at the time of making this agreement, is of some materiality. That position is quite clearly disclosed. It involved a purchase some two or three years before, at a time when both parties anticipated great development of the city of Ashland, of certain lots upon a plat covering an entire quarter section of land belonging to the defendant. The correspondence between the parties makes perfectly obvious the fact that the purchase was a

speculative one, with a view to selling again; also that the plaintiff, with the knowledge, and indeed to some extent with the co-operation, of the defendant, had cleared up the lots and had built houses upon two of them. A letter of the defendant requesting plaintiff to accept the so-called bond for a deed, instead of the deed, indicates as a reason therefor defendant's desire to temporarily withhold his plat from record. As a result of all these considerations, we cannot doubt that the force of the last-quoted clause in that agreement was to temporarily postpone the acknowledged right of the plaintiff to immediate conveyance of the premises as lots upon a recorded plat, and that both parties had assented to that measure of modification of the otherwise complete right of the plaintiff to his deed. But the contract does not define the period of that limitation. It leaves it wholly indefinite. The construction must be, therefore, either that it rested with the defendant, *Bardon,* absolutely and wholly, so that, if he saw fit never to record the plat, the plaintiff would never be entitled to a deed of the lots for which he had paid, or it must be deemed to have been subject to the limitation which the law customarily fixes upon agreements where the time of performance is not specified by the parties, namely, that a reasonable time is allowed therefor, unless, indeed, it should be treated as vesting the option in the plaintiff to terminate the delay at his will by demand. The first construction, whereby the plaintiff might never acquire the legal title to the premises he had purchased and paid for, we cannot entertain as expressing the intention in the mind of either party; assuming, as we must, that they were rational men and that the contract was intended to accomplish some purpose. Abandoning that construction as impossible, the most favorable one to the defendant is that he had reserved to himself a reasonable time within which he should not be compelled by the demand of the plaintiff to legally record his plat and to convey the lots according to it. It is quite unnecessary to discuss how short

a time might satisfy this idea, under all the circumstances, for the plaintiff allowed more than nine years to elapse; and it is too plain for discussion that parties could not have contemplated as a reasonable time for the suspension of this purchaser's legal title a longer period than that.

If, then, as seems to us unavoidable, it be determined that the reasonable time accorded the defendant to record his plat had elapsed, we have only the other element of the contract, unembarrassed by that qualification, namely, the absolute agreement of *Bardon* to make a good and sufficient deed upon plaintiff's demand. This he categorically refused, according to the undisputed testimony of McCloud; and we can discover no escape from the conclusion that the contract was wholly broken at that time, and plaintiff informed that, notwithstanding his payment for the lots, the defendant would not convey them to him; that the consideration for which his money had been paid had, by the wrongful act of the defendant, failed. No plainer case for the exercise of the right of rescission can be presented. Plaintiff might, it is true, have sued for his damages. Whether he might also have maintained an action for specific performance, involving, as it did, an act on the part of *Bardon* in acknowledging and recording his plat, which, perhaps, a court of equity could not perform in the event of his refusal, is a question we need not decide. Certain limitations on the efficacy of such a proceeding are discussed in *Park v. M., St. P. & S. S. M. R. Co., post,* p. 347, 89 N. W. 532. True, courts are not swift to enforce absolute rescission of contracts for breaches of their terms not going to the whole consideration thereof, but in this case there was not only the technical refusal of the defendant to make a deed when demanded, but there was upon the trial his declaration that he never would convey the lots according to the plat contemplated at the time of contracting. True, he only declared negatively that he would not record the plat, but he made no suggestion that he was willing to convey other than

by metes and bounds. This we cannot consider in any respect a compliance with the contract of purchase and sale which had been made. The conveyance of specified lots according to a certain plat would have given to the plaintiff important and valuable rights, such as would not accompany a deed made without reference to that plat. *Donohoo v. Murray,* 62 Wis. 100, 22 N. W. 167; *McFarland v. Lindekugel,* 107 Wis. 474, 83 N. W. 757. It was therefore entirely plain that *Bardon* refused to convey to the plaintiff that for which he had paid his money, from which arose his right to recover back that which he had paid, and also the amount to which he had enhanced the value of the premises by building thereon or otherwise improving them in reliance upon defendant's agreement to convey to him, with interest, however, only from the date of notice of rescission. *Rice v. Ashland Co., ante,* p. 130, 89 N. W. 908.

Apparently the court below escaped this conclusion, partly at least, on the ground of plaintiff's laches. To this view we cannot subscribe. Plaintiff was under no duty to act until he was informed of some denial of his rights by defendant. During all the period from 1890 to 1899 he was justified in the supposition that *Bardon* still intended to record the plat, and not until September, 1899, did he receive any intimation to the contrary. Up to that time he supposed he was accommodating defendant's convenience. After that information he acted with due diligence, for within a little more than a year he exercised his election to rescind, notified defendant, and brought suit. Meanwhile defendant's position was in no wise changed. There are here no facts on which to impute laches. Plaintiff was clearly entitled to recover such sum as the evidence justified, and the trial court should so have instructed the jury. Direction of verdict for defendant was error.

*By the Court.*—Judgment reversed, and cause remanded for a new trial.