SHEPARD and others, Respondents, vs. PABST, Appellant.

*February 23—March 12, 1912.*

*Injunction: Motion to vacate: Sufficiency of complaint: Action at law: Delay as a bar: Vendor and purchaser of land: Contract: Construction: Option to purchase or selling agency: Fraud of agent: Liability of principal: Waiver of fraud in contract induced thereby.*

1. A motion to vacate a temporary injunction challenges the sufficiency of the complaint and presents all questions which would be presented by a general demurrer.

2. There is nothing inconsistent in a contract which creates an agency to sell and also gives the agent himself an option to purchase which he may, but is not bound to, avail himself of at any time during his agency.

3. The legal name which the parties to a contract give to their acts or instruments is not controlling in interpretation. The real, substantial nature of the legal relation thereby created will control, and the meaning of the contract is to be ascertained from a survey of the whole instrument, all parts thereof being harmonized if that can be done.

4. The mere execution by the vendor of land of an option contract thereon does not *per se* constitute the holder his agent, and he will not be bound by any fraud or misrepresentation by such holder inducing a sale to a second purchaser, if the contract is only what it purports to be and was not intended merely as a form of agency; and the rule is the same although it is contemplated that the contract may be assigned.

5. In an action to recover damages, based on misrepresentations by which plaintiffs were induced to purchase lands of the defendant, a contract relating to the lands in question and others (the provisions of which are fully stated in the opinion), between defendant and a corporation which is alleged to have made the false representations to plaintiffs, is *held* not to have been a contract of sale nor a mere option contract, but to have created a selling agency in such corporation, with an option on the part of the agent to purchase any or all of the lands at any time up to the termination of such agency; and defendant is responsible, therefore, for fraud of his agent.

6. Where a purchase of land is induced by the fraud of the vendor's agent in pointing out other land as that offered for sale, the vendor is not relieved of liability for such act of the agent by

a clause in the sale contract to the effect that the purchasers agree and warrant, as part of the consideration for the sale to them, that they have inspected the premises and that they are not relying upon any representation made by the vendor or any agent, and that they explicitly waive any claim on that account. In such a case the agent's fraud avoids the assent to such a clause as well as to the other recitals and stipulations of the contract which the purchaser signs under the influence of such misrepresentation.

7. It cannot be held, on a mere motion to dissolve a temporary injunction, that a delay of six months after discovery of fraud in a sale of land is sufficient, as a matter of law, to bar an action based on such fraud.

8. Where the purchaser of land seeks, in an action at law based on fraud, to recover damages equal in amount to the money paid and the unpaid notes given by him, if there is no averment that defendant is insolvent or unable to respond in damages, plaintiff is not entitled, under sec. 2774, Stats. (1898), to a temporary injunction restraining defendant from selling or transferring such notes or assigning the land contract, or from commencing actions thereon himself, either at law or in equity; and especially should such an injunction be dissolved where the defendant has been permitted to set up in the action a counterclaim upon the unpaid notes.

APPEAL from an order of the circuit court for Waukesha county: MARTIN L. LUECK, Circuit Judge. *Reversed.*

For the appellant there was a brief by *Lines, Spooner, Ellis & Quarles,* and oral argument by *Louis Quarles.* They cited, among other authorities, *Harney v. Burhans,* 91 Wis. 348, 64 N. W. 1031; *Burnham v. Milwaukee,* 98 Wis. 128, 73 N. W. 1018; *Minneapolis v. Minneapolis St. R. Co.* (Minn.) 133 N. W. 80; *Williams M. & R. Co. v. Raynor,* 38 Wis. 119; *Burton v. Douglass,* 141 Wis. 110, 123 N. W. 631; *Hicks P. Co. v. Wis. Cent. R. Co.* 138 Wis. 584, 120 N. W. 512; *Peoria Mfg. Co. v. Lyons,* 153 Ill. 427, 38 N. E. 661; *Weston v. Brown,* 158 N. Y. 360, 53 N. E. 36; *Fish v. Benedict,* 74 N. Y. 613; *Robinson v. Easton,* 93 Cal. 80, 28 Pac. 796; *First Nat. Bank v. Snell,* 144 Wis. 433, 129 N. W. 668; *Law v. Grant,* 37 Wis. 548; *Rogers v. Cross,* 3 Pin. 36; *Wolf River L. Co. v. Brown,* 88 Wis. 638, 60 N. W. 996.

For the respondents there was a brief by *T. M. Priestley* and *Fiedler & Fiedler,* and oral argument by *Mr. E. C. Fiedler* and *Mr. Priestley.* They cited *Smith v. Merrill,* 134 Wis. 227, 114 N. W. 508; *Russell v. Andraé,* 79 Wis. 108, 112, 48 N. W. 117; *Arnold v. Nat. Bank,* 126 Wis. 362, 105 N. W. 828; *Collat v. Gottschalk,* 142 Wis. 503, 125 N. W. 957; *Miller v. L. & N. R. Co.* 83 Ala. 274, 4 South. 842; *Crittenden v. Armour,* 80 Iowa, 221, 45 N. W. 888; *Chezum v. Kreighbaum,* 4 Wash. 680, 30 Pac. 1098; *Cannon C. Co. v. Taggart,* 1 Colo. App. 60, 27 Pac. 238; *Faraday C. & C. Co. v. Owens,* 26 Ky. Law Rep. 243, 80 S. W. 1171; *Winders v. Hill,* 141 N. C. 694, 54 S. E. 440; *Morse v. Ryan,* 26 Wis. 356; *Fraser v. Ætna L. Ins. Co.* 114 Wis. 510, 90 N. W. 476; *Burke v. M., L. S. & W. R. Co.* 83 Wis. 410, 53 N. W. 692; *Garlick v. Morley,* 147 Wis. 397, 132 N. W. 601; *Twentieth Century Co. v. Quilling,* 136 Wis. 481, 487, 117 N. W. 1007; *Freeman v. Harbaugh Co.* 114 Minn. 283, 130 N. W. 1110; and other cases.

TIMLIN, J.  Upon a verified complaint having the contracts in question annexed thereunto as exhibits, and an affidavit by two of the plaintiffs, a restraining order was issued enjoining the defendant from selling, assigning, or transferring any and all unpaid notes theretofore executed by the plaintiffs and delivered to the defendant, and from selling, assigning, or transferring a certain written contract, and from commencing or prosecuting any action at law or suit in equity against the plaintiffs, or either of them, upon the said unpaid notes or contract until the further order of the court.  The defendant moved before the circuit court to vacate this restraining order, or in the alternative to modify it so as to permit the defendant to commence suit on the notes.  This motion was supported by several affidavits and a proposed answer and counterclaim or cross-complaint, and after hearing the circuit court ruled that the complaint was sufficient to state a

cause of action against the defendant, also that the contract between the defendant and the Western Land Securities Company constituted the latter the agent of the defendant, and that the plaintiffs were not, by reason of anything in the contract between them and the defendant, estopped to allege and prove fraud, and further modified the injunction by permitting the defendant to interpose in this action a counterclaim upon any and all notes held by him against the plaintiffs. From this order the defendant appeals. He contends that the following issues are involved on the appeal: (1) A construction of the contracts between appellant and the Securities Company as to whether they are contracts of purchase or option to purchase, or whether they are contracts of agency; (2) whether this action can be maintained by respondents in view of their stipulation relating to their examination of the land and nonreliance on any representations made to them; (3) whether respondents are guilty of negligence in failing to ascertain the alleged fraud within a reasonable time; (4) whether it is a proper case for an injunction.

It is conceded that the motion to vacate the injunction challenges the sufficiency of plaintiffs' complaint and presents all questions to this court which would be presented by a general demurrer, within the rule of *Harley v. Lindemann,* 129 Wis. 514, 109 N. W. 570; *Sage v. Fifield,* 68 Wis. 546, 32 N. W. 629; and *Judd v. Fox Lake,* 28 Wis. 583. There is thus attempted to be presented *in limine* that very perplexing question discussed in 1 Mechem on Sales, secs. 43 to 50, inclusive. That learned author, writing in 1901, says:

"The cases involving this question have now become so numerous, and the varieties of forms of contracts so great, that it would be impracticable to attempt a full exposition of them in the text." Sec. 47.

This practical consideration, joined with well known common-law rules, forbids any such attempt within the narrower limits of a judicial decision. Confining ourselves as closely

as possible to the case presented: The defendant, who resided in Waukesha county, Wisconsin, was the owner of about 64,000 acres of land in North Dakota. The Western Land Securities Company was a Minnesota corporation with its principal office and place of business in the city of St. Paul, and engaged, among other things, in marketing, selling, and disposing of lands as agent, for compensation. On December 1, 1907, these two persons entered into an agreement in writing to be hereinafter noticed, and upon the construction of this agreement the case mainly turns. The Securities Company about June, 1908, undertook to sell to the plaintiffs 4,241.76 acres of this land, and, as is averred, falsely and fraudulently pointed out to the plaintiffs as the lands in question other and different lands far superior in quality and value to the lands of defendant, representing such lands so pointed out as the lands which they were selling, and plaintiffs, relying on such representations, paid the money, entered into the contract with defendant, and gave the notes hereinafter mentioned. It does not appear by the complaint exactly when the plaintiffs discovered the alleged fraud. It does appear that they made payments as late as June 29, 1910, and that since the discovery of the fraud they have executed and tendered to the defendant a conveyance or release and relinquishment of all their right, title, and interest whatsoever in the lands included in their contracts with the defendant and offered to deliver the same to the defendant, and they make the offer to reconvey in their pleading, and it also appears by averment that all the sums paid by the plaintiffs upon the purchase price were paid without knowledge on their part of the fraud committed upon them and before the discovery of said fraud. There is an inference then that the fraud was discovered after June 29, 1910, and the action was begun in January, 1911.

The contract between the defendant and the Securities Company recites that the defendant is the owner of the lands

in question and certain personal property used or intended to be used in connection therewith, and desires to sell and dispose of the lands and personal property except the horses, cattle, hay, etc.    This paragraph follows:

"Whereas said party of the second part [Securities Company] is engaged· in the purchase and sale of such lands and the marketing the same, in parcels, among settlers and other purchasers, and is desirous to acquire title to said personal property, and the right up to June 1, 1910, to so market, sell, and dispose of the lands aforesaid, and the right to said date to acquire title to such of said lands as shall not be so sold or disposed of: Now, therefore, in consideration of the premises and the sum of $32,000 in hand paid by said party of the second part to said party of the first part, the receipt whereof is hereby acknowledged, and in consideration of the agreements hereinafter contained," etc.

Then follows a recital of the purchase price, a provision that this shall bear interest from December 1, 1907, payable annually, special provisions relating to small tracts to which the title might fail, and then:

"That said party of the second part at its own cost and expense shall forthwith and at all times hereafter, during the life of this agreement, use its best endeavors to find purchasers for all of said lands in parcels, either for cash or upon land contracts to be made with said party of the first part upon terms of not less than one third cash and the balance in not to exceed eight equal annual payments evidenced by the promissory notes of the purchaser thereof payable to the order of the said party of the first part, with interest thereon at the rate of five per cent. per annum, payable annually or semi-annually, which land contracts shall be in the form hereto annexed and marked Exhibit 'D,' and made a part hereof, and shall be executed in duplicate."

The fourth paragraph fixes the minimum price at which the Securities Company may sell the land, and if it goes below that price it must make up the deficiency in cash.    Upon each sale the consideration must be promptly paid or turned over

to the defendant with the said land contract properly executed, and thereupon the defendant, either in person or by his duly authorized agent, shall execute a land contract in duplicate, retain one, and deliver the other to the Securities Company for such purchaser, and credit the amount thereof upon the purchase price, subject to conditions. It was also agreed that the Securities Company might, at its election, purchase from the defendant any of the said lands and pay him for such lands according to the provisions and terms therein for sales to other purchasers. In the sixth paragraph it was stipulated that at any time during the life of the agreement, if the Securities Company should not be in default, the defendant would, upon demand, convey to the Securities Company any parcel or parcels of said lands not theretofore conveyed by him under the contract or agreed to be conveyed by land contract to others, upon payment to the defendant for said parcels in cash at a fixed rate per acre. By the seventh subdivision it was provided that at any time during the existence of the agreement, the Securities Company not being in default and the lands sold amounting to a stated price per acre, the defendant would on demand execute and deliver to the Securities Company his warranty deed of the balance of said land not theretofore conveyed or agreed to be conveyed to others by land contract under the agreement. By the eighth paragraph the Securities Company was given the right to the possession of all the land with an item excepted, but in case it failed to perform its agreements it was required to surrender up possession to the defendant. The Securities Company was required to pay all taxes and assessments during the life of the agreement except such as might be payable by purchasers under said land contracts, and to furnish duplicate receipts to the defendant. It was provided that the covenants of this instrument should extend to the heirs, legal representatives, and assigns of defendant, and to the successors and assigns of the Securities Company.

In a modification of this contract made February 22, 1908, not otherwise relevant here, some prior contract was described as "a preliminary agreement for the sale or purchase or option to purchase certain lands," and the aforesaid contract as "a permanent agreement therefor." This modification recited certain co-operation between the Securities Company and the defendant to procure for the defendant a release of some claim on part of the land. It corrected some descriptions in the agreement of December 1, 1907, and provided for an indorsement thereon as a payment by the Securities Company to *Pabst* of the sum of $27,740 as of the date thereof.

The land contract which the Securities Company was obliged to make with purchasers was in the same form and contained the same stipulation with reference to representations as that which the defendant made with the plaintiffs and which will now be taken up. This last mentioned contract names the defendant as vendor and the plaintiffs as vendees, does not mention the outstanding option to the Securities Company. It recites a present sale, and it binds the vendor to convey to the vendees, upon performance by them, the lands therein described, which are a portion of the 64,000 acres optioned to the Securities Company. The vendees agree to make a cash payment to the vendor which is receipted, to execute their interest-bearing promissory notes which are described, and to pay all taxes and assessments and furnish duplicate receipts to defendant. A forfeiture for nonpayment is provided, and in such case the property is to come back to defendant, his heirs, legal representatives, or assigns. There is also this provision:

"The said parties of the second part hereby agree and warrant, as a part of the consideration for the sale to them of said land, that they have inspected said premises, and that in making this purchase and in executing this contract they are not relying upon any representation made by the party of the first part, or by any agent or servant thereof, and explicitly waive any claim on that account."

This contract was rewritten, with slight modification not material on the question here presented, on February 4, 1909.

The complaint expressly charges that the defendant, by writing of December 1, 1907, appointed the Securities Company his agent to market, sell, and dispose of the lands in question, and this may be considered a sufficient pleading of what the defendant intended by that instrument, if such intention is not negatived by the writing annexed to the complaint. The complaint also avers that the plaintiffs purchased the lands from the defendant through the Securities Company, defendant's agent, which conducted all negotiations in behalf of defendant leading up to the making of the contract between plaintiffs and defendant. We are to inquire whether the written instruments show that the Securities Company had authority to do so. Appellant points out, among other things, the following features indicating that the instrument of December 1, 1907, was a contract of sale: (1) The declaration in the amendatory agreement of February 22, 1908, above mentioned describing the preceding agreements; (2) the payment of a large sum of money by the Securities Company to the defendant; (3) the Securities Company was given possession of the property; (4) it was to pay interest on the purchase price and pay taxes; (5) it was given the right to purchase the property; (6) the net proceeds of sales by it to be applied on the purchase price, and when less than the specified price per acre at which it was required to sell, the Securities Company should make up the deficiency; (7) all moneys received over the stipulated price to belong to the Securities Company; (8) the latter had a right at its option to take a deed for the unsold remainder of the tract or for all the tract. Some of these, it will be observed, are quite appropriate to either form of contract, agency or sale. On the other hand, as pointed out by respondents, the contract contained the following indications of agency: (1) It recites that the defendant owns land which he is desirous of selling

and the Securities Company is engaged in marketing the same among settlers and other persons; (2) the Securities Company is desirous to acquire (a) title to the personal property, (b) the right up to June 1, 1910, to so market, sell, and dispose of the lands, (c) the right up to the date last mentioned to acquire title to such of said lands as shall not be so sold and disposed of; (3) the Securities Company binds itself to use its best endeavors to find purchasers for all of said lands or parcels either for cash or upon land contracts to be made with defendant by the persons whom the Securities Company finds as purchasers; (4) the price for which the Securities Company must sell, the time, terms, and form of the land contract which it must negotiate and find purchasers to agree to, are fixed, and in these contracts the Securities Company does not appear at all, but the purchaser found or procured by it is vendee and the defendant is vendor; (5) the Securities Company did not agree to purchase any of the land from defendant, there are no words of present sale to the Securities Company, the latter was merely given the option to so purchase; (6) if the Securities Company exercises its option to purchase it could do so for the unsold remainder of such land, if any such remainder there should be.

What was the value of the personal property or the value of the use and occupation of the land does not appear. It seems to be assumed by counsel for appellant and by counsel for respondents that this must be either a contract of agency or a contract of sale; that it cannot be both, and there are cases to that effect. Such cases usually involve a question of title, like *Monitor Mfg. Co. v. Jones,* 96 Wis. 619, 72 N. W. 44. There is nothing inconsistent in a contract which creates an agency to sell and also gives the agent an option to himself purchase, which he is at liberty to avail himself of at any time during his agency but is not bound to do so. *Russell v. Andrae,* 79 Wis. 108, 48 N. W. 117; *Puffer v. Welch,* 144

Wis. 506, 129 N. W. 525; *Arnold v. Nat. Bank,* 126 Wis. 362, 105 N. W. 828.

"Contracts admit of infinite variety, and they are all valid except where lacking a consideration, lacking parties or capacity, lacking mutual assent, or contrary to rules of law or subversive of public morals." *Hartman F. & C. Co. v. Krieger,* 137 Wis. 650, 119 N. W. 347.

There is no rule of law which forbids the principal giving, or the agent taking, an option to the latter to purchase. The legal name which the parties give to their acts or instruments is not controlling in interpretation. The real substantial nature of the legal relation created thereby will control the mere name. Neither are provisions to be isolated, identified, and named as if they stood alone and then set back in their place in the instrument with this meaning fixed so as to overrule the meaning derived from a survey of the whole. All parts of the instrument must be harmonized if this may be done. One of the most significant provisions of the instrument in question is that in which the parties declare what they desire to accomplish. That is, to acquire title to the personal property, to acquire the right to market, sell, and dispose of the lands, and to have the right, within the time limited, to acquire title to such of the lands as shall not be sold or disposed of. They do not agree to purchase the land, but are merely given the option to do so within a time fixed, and during this period of time they have the right to market and sell, but in all such sales made by them to others the defendant fixes the price and the terms, and he has to appear as vendor and such others as vendees. The Securities Company paid a large sum of money, but it acquired therefor the title to the personal property, the possession of the lands, and the right or option to purchase, and the right, up to the time it saw fit to exercise its option to purchase, to market and to sell defendant's lands to whomsoever it could induce to buy and thereby earn

the difference between the amount for which it sold the land and the price per acre fixed in this contract.    The large payment under such circumstances is shorn of much of the significance which was given to it in *Harney v. Burhans,* 91 Wis. 348, 64 N. W. 1031, where the question considered was quite different.    There the question which arose between the parties to the instrument was whether a contract of purchase or a mere agency to sell was intended, and it appeared that the promisee or agent had paid nearly half of the purchase price. This fact was properly taken to negative a mere agency and to give the transaction the *indicia* of a purchase.    But in the instant case it expressly appears that there was no purchase by the Securities Company of the land.    The instrument is carefully drawn, and in no part thereof does the Securities Company agree to purchase the land.    The most that could be said is that it has the right to purchase the land not theretofore sold by it to others at any time after the making of the contract and before June 1, 1910, should it elect to do so. All the provisions of the instrument harmonize with this view. Even the amendatory writing of February 22, 1908, upon which much reliance is placed, describes the preliminary agreement as one "for the sale or purchase or option to purchase certain lands."    Fixing a price to the Securities Company was a necessary part of the option given it.    Requiring it to make up the deficiency, in case of sale by it below the fixed price, was necessary to give some elasticity to that part of the contract which fixed an uniform price per acre upon large tracts which the Securities Company was authorized to sell to settlers in small parcels, presumably at prices somewhat varying according to the quality of the land.    The advance by the Securities Company was secured by personal property acquired; by the possession of the lands; and by its option to take the unsold lands and have credit thereon for all its advances; as well as by its commissions or profit on what sales it made to settlers or others.    We are convinced that the

contract in question does not controvert but rather supports the averment of the complaint that it was intended by the parties thereunto to constitute the Securities Company the selling agent of the defendant up to such time as the former exercised its option and became itself a purchaser.

Having reached this conclusion, all difficulty with reference to the effect of the clause quoted from plaintiffs' contract waiving reliance upon representations disappears. For it cannot be successfully contended that a principal may put in the hands of his selling agents an instrument containing such a provision, and, after the agents have by fraud obtained assent to this instrument, hold this part of it conclusive upon the defrauded party. There ought to be some way in which a principal may relieve himself from responsibility for the misrepresentations of his agent which he has not authorized, but certainly it cannot be done by prescribing a form of contract for the agent to negotiate which declares either that there were no misrepresentations or that the party whose consent the agent is to obtain did not rely upon misrepresentations, where the purchaser is induced to buy by pointing out to him land which the principal does not own and which the agent did not intend to sell him as and for the land to be purchased. In such case the agent's fraud avoids the assent to this as well as to the other recitals and stipulations of the contract which the buyer signs under the influence of such misrepresentation. Fraud avoids all contracts, and if one of two innocent persons must be the sufferer it seems more just, at least it is more according to law, that that one should be the principal who selected the dishonest agent and put it in the power of the latter to prey upon the public. *Bridger v. Goldsmith,* 143 N. Y. 424, 38 N. E. 458; *Burroughs v. Pacific G. Co.* 81 Ala. 255, 1 South. 212; *Hickman v. Stewart,* 69 Tex. 255, 5 S. W. 833; *Smyth v. Munroe,* 84 N. Y. 354; *Shapley v. Abbott,* 42 N. Y. 443; *Universal F. Co. v. Skinner,* 64 Hun, 293, 19 N. Y. Supp. 62. The mere execution by the owner of the land of

an option contract thereon does not *per se* constitute the holder his agent, and he will not be bound by fraud or misrepresentations inducing a sale to a second purchaser, where such contract is only what it purports on its face to be and not intended merely as a form of agency; and the rule is the same although it is expected that the contract may be assigned before its expiration in case the holder should sell the property. *Alger v. Keith,* 105 Fed. 105, 44 C. C. A. 371.   This rule may come very close to the situation in the case at hand.   A good illustration is found in *Reeves v. McCracken,* 103 Tex. 416, 128 S. W. 895.   The distinction between that case and the instant case is that we find in the latter indications of an intention to create a selling agency, giving the agent at the same time an option to himself become the purchaser or go on acting as selling agent.

The real question, therefore, is not to distinguish between a contract of agency and a contract of sale, but to ascertain whether or not the contract in question created a selling agency, with the option on the part of the agent to purchase any or all of the lands at any time up to the termination of his selling agency, or whether it constituted solely an option contract without any agency features.   We are convinced that notwithstanding other features in the contract an agency for the purpose of selling was thereby created.

We cannot upon this motion hold that a delay of six months after discovery and before bringing suit would absolutely and as matter of law bar the plaintiffs' action.   There may be evidentiary facts not necessary to be pleaded or properly pleadable which would affect this question.

Each of the competent and capable counsel representing the litigants is here asserting that this is an action for damages. We may suggest that this might lead to complications further on and also suggest an examination of the following actions at law:   *Isaacs v. Bardon,* 114 Wis. 142, 89 N. W. 913; *Main v. Procknow,* 131 Wis. 279, 111 N. W. 508; *State v.*

*Snyder,* 66 Tex. 687, 18 S. W. 106. And see 1 Pomeroy, Eq. Jur. (3d ed.) § 110. In actions for damages based on misrepresentations the vendee usually keeps the property and recovers either more or less than what he paid, and sometimes, but not necessarily, damages equal to the amount which he paid. In actions like *Isaacs v. Bardon, supra,* he recovers the amount paid with interest from the time of demand. But it may be that the plaintiffs can elect to take a lesser measure of damages and still carry on their action as one for damages for deceit, a point which we do not at this stage of the action find it necessary to decide.

When we take up the next question the significance of these observations will appear. Whether or not this is a proper case for injunction depends upon the nature of the right asserted by plaintiffs and denied by defendant. The plaintiffs here seek to recover damages equal to money and notes paid and notes executed and not yet paid to the defendant. But the action being at law, in any event the injunction must rest on the authority given by sec. 2774, Stats. (1898). Assuming that it appears by the complaint that the plaintiffs are entitled to the judgment demanded, yet no part of said judgment demanded consists in restraining the commission or continuance of any act whatsoever, much less the act described in the statute. Neither does it appear that the defendant is doing, or threatens or is about to do, any act whatsoever in violation of plaintiffs' rights, much less an act respecting the subject of the action which would tend to render plaintiffs' judgment ineffectual. It is not in violation of plaintiffs' right to recover damages, which damages include these very unpaid notes, for the defendant to sell the notes if he is so disposed. That would rather emphasize plaintiffs' right to recover the damages they claim. Neither would such act make or tend to make plaintiffs' judgment for damages ineffectual, but the contrary. Nothing of this kind appears in the complaint, but in a supplementary affidavit on which, to-

gether with the complaint, the restraining order was issued, it merely appeared that "plaintiffs are fearful that the defendant will sell, assign, and transfer said notes to third parties and said third parties will commence actions thereon against the plaintiffs." But if the defendant does not sell or transfer the notes he will commence such actions himself. The conclusion that such actions would result in annoyance and irreparable loss and damage cannot avail against the facts. It is also averred, following this, that the defendant has given out that he will commence and prosecute actions on said notes and contract. This is more explicit, but, as we have seen, he was permitted to come in by counterclaim in this action for that purpose. Hence this cannot support the injunction. The plaintiffs cannot well expect to recover money damages to the amount of the notes given and unpaid and at the same time deny the defendant's ownership of such notes or their binding force. There is no averment that defendant is insolvent or unable to respond in damages. Upon such showing in a case of this kind there was no right to the continuation of the remaining portion of the injunctional order and it should have been vacated.

*By the Court.*—Order reversed, and the cause remanded for further proceedings according to law.